J-S20009-20
J-S20010-20
J-S20011-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MATTHEW GOMEZ | : | |
| | : | |
| Appellant | : | No. 1162 EDA 2019 |

Appeal from the Judgment of Sentence Entered March 22, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0005979-2015-,
CP-51-CR-0009019-2015, CP-51-CR-0009020-2015

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MATTHEW GOMEZ | : | |
| | : | |
| Appellant | : | No. 1163 EDA 2019 |

Appeal from the Judgment of Sentence Entered March 22, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0005979-2015,
CP-51-CR-0009019-2015, CP-51-CR-0009020-2015

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MATTHEW GOMEZ | : | |
| | : | |
| Appellant | : | No. 1164 EDA 2019 |

J-S20009-20
J-S20010-20
J-S20011-20


Appeal from the Judgment of Sentence Entered March 22, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0005979-2015,
CP-51-CR-0009019-2015, CP-51-CR-0009020-2015


BEFORE:  SHOGAN, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY SHOGAN, J.:                    **FILED NOVEMBER 06, 2020**

Appellant, Matthew Gomez, appeals from the judgments of sentence imposed following a probation-revocation hearing.  Appellant has filed appeals in three underlying court of common pleas matters.  Each appeal has been given a separate Superior Court docket number:  1162 EDA 2019, 1163 EDA 2019, and 1164 EDA 2019.  The appeals include identical issues and briefs.[1] A single trial court opinion disposed of all three matters.  As such, we *sua sponte* consolidate these matters pursuant to Pa.R.A.P. 513 and address them concurrently.

---

[1]  As Appellant stated in his appellate briefs:

> This appeal represents a challenge to three related matters, which are listed consecutively by this Court, 1162 EDA 2019, 1163 EDA 2019, and 1164 EDA 2019 (on appeal from CP-51-CR-0009019-2015, CP-51-CR-0005979-2015, and CP-51-CR-0009020-2015). The lower court held a single hearing on all three matters as a consolidated revocation and sentencing proceeding.  As explained *infra*, because this Court did not grant Petitioner's request in the alternative to consolidate the matter, and deferred the issue to the panel, separate but identical briefs were filed in each case.

Appellant's Brief at 1.

J-S20009-20
J-S20010-20
J-S20011-20

The trial court summarized the factual and procedural history of these cases as follows:

> By way of background, as of CP-51-CR-0005979-2015, [A]ppellant appeared before the Honorable Robert J. Coleman of the Court of Common Pleas of Philadelphia County on July 28, 2016, and entered a negotiated guilty plea to charges of aggravated assault graded as a felony of the second degree, and possessing instruments of crime, generally, a misdemeanor of the first degree, in exchange for which he received a sentence of five years' probation on the aggravated assault charge and a sentence of eleven and one-half to twenty-three months' incarceration followed by a term of probation of three years which was ordered to be served consecutively to the probationary sentence imposed on the aggravated assault charge. Thereafter, [A]ppellant appeared before this [c]ourt on May 15, 2017, for a violation of probation hearing.[1] At the conclusion of the hearing, this [c]ourt revoked [A]ppellant's probation and imposed a sentence of one to two years' incarceration followed by a term of probation of five years. Appellant was ordered to be supervised by the Sex Offender's Unit of the Philadelphia Probation Department. No further penalty was imposed on the possessing instruments of crime, generally, charge.

> [1] The case was referred to this [c]ourt administratively for the violation of probation hearing.

> Appellant again appeared before this [c]ourt on March 22, 2019 for a violation of probation hearing. At the conclusion of the hearing, this [c]ourt revoked [A]ppellant's probation and imposed a sentence of two to four years' incarceration followed by a term of probation of four years.

> As of CP-51-CR-0009019-2015, and CP-51-CR-0009020-2015 [A]ppellant appeared before this [c]ourt on March 17, 2016, and entered a negotiated *nolo contendere* pleas to two separate counts set forth in the above two Bills of Information charging indecent assault of a person less than thirteen years of age in exchange for which he was promised that he would receive immediate parole followed by five years' reporting probation with Sex Offender Conditions. Said sentences were imposed on July 14, 2016. Appellant was directed to have no unsupervised contact

- 3 -

with minors, to stay away from the victims, and submit to lifetime sex registration.

On May 15, 2017, [A]ppellant appeared before this [c]ourt for a violation of probation hearing at the conclusion of which probation was revoked and sentences of one to two years' incarceration followed by a term of probation of four years on both of the indecent assault convictions were imposed on [A]ppellant. This [c]ourt ordered [A]ppellant to be supervised by the Sex Offender Unit of the Probation Department and to receive mental health treatment.

On March 22, 2019, [A]ppellant again appeared before this [c]ourt for a violation of probation hearing. At the conclusion of the hearing, this [c]ourt revoked [A]ppellant's probation in both cases and imposed a sentence of four years' probation as of CP-51-CR-0009019-2015 and a sentence of incarceration of two to four years as of CP-51-CR-0009020-2015, which sentence was ordered to run concurrently with the sentence of incarceration of imposed as of CP-51-CR-0005979-2015.

On April 15, 2019, [A]ppellant filed an untimely post-sentence motion as of CP-51-CR-0009020-2015 only.[2] On April 22, 2[01]9, [A]ppellant filed notices of appeal in each of the three cases.[2] He thereafter filed a court-ordered Pa.R.A.P. 1925(b) Statement of Matters Complained of on Appeal.

> [2] This [c]ourt leaves it to the discretion of the reviewing court to determine whether [A]ppellant waived appellate review as of the other two Bills of Information because of the failure to file separate post-sentence motions in those other cases.

Trial Court Opinion, 7/8/19, at 1-3.

_____

[2] Thirty days from March 22, 2019, was Sunday, April 21, 2019. Thus, Appellant had until Monday, April 22, 2019, to file his notice of appeal. *See* 1 Pa.C.S. § 1908 (for computations of time, whenever the last day of any such period shall fall on Saturday or Sunday, or a legal holiday, such day shall be omitted from the computation.).

J-S20009-20
J-S20010-20
J-S20011-20

Appellant presents the following issues for our review:

1. Should not this Court address the merits of Appellant's appeal where he filed one timely appeal for each docket and the transcript numbers all represent one judgment of sentence imposed by a single judge on one defendant during one proceeding?

2. Was not the evidence insufficient to support a revocation of probation on each case where the Commonwealth failed to prove that Appellant violated lawfully imposed conditions of probation relating to curfew, sex offender treatment, and possession of non-obscene videos or games, where the Board of Probation and Parole lacked authority to impose these condition[s], and the trial court, as required by 42 Pa.C.S.A. §9754, had not imposed them?

3. Did not the trial court impose a manifestly excessive sentence of total confinement for technical violations in violation of Sections 9771 and 9721 of the Sentencing Code, where the sentence is both unreasonable and unnecessary to vindicate the authority of the court, and where the court failed to consider the least restrictive alternatives, Appellant's needs, and the possible harm to the community?

Appellant's Brief at 4.

Appellant first raises the issue of whether these appeals are properly before us.[3] The record reveals that on April 22, 2019, Appellant filed identical notices of appeal at trial court docket numbers at CP-51-CR-0009019-2015, CP-51-CR-0009020-2015, and CP-51-CR-0005979-2015. All three notices of appeal bore docket numbers CP-51-CR-0009019-2015, CP-51-CR-0009020-2015, and CP-51-CR-0005979-2015. Notices of Appeal, 7/31/18. This Court's

---

[3] While Appellant raises this matter in his first issue, had he not raised it, we would have addressed this issue *sua sponte* as it pertains to our jurisdiction. *See Commonwealth v. Borrero*, 692 A.2d 158, 159 (Pa. Super. 1997) (permitting appellate court to *sua sponte* examine its jurisdiction).

criminal docketing statements reflect that the appeal at CP-51-CR-0009019-2015 was docketed at Superior Court docket number 1162 EDA 2019, the appeal at CP-51-CR-0009020-2015 was docketed at Superior Court docket number 1163 EDA 2019, and the appeal at CP-51-CR-0005979-2015 was docketed at Superior Court docket number 1164 EDA 2019.

In **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), our Supreme Court explained that "[t]he Official Note to [Pa.R.A.P.] 341 provides a bright-line mandatory instruction to practitioners to file separate notices of appeal." **Id.** at 976-977. "Where ... one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeals must be filed." **Id.** at 976 (quoting Pa.R.A.P. 341, note). The failure to file separate notices of appeal at each docket requires the appellate court to quash the appeal. **Id.** at 977. Our Supreme Court held that **Walker** applies prospectively to appeals filed after June 1, 2018. **Id.** at 971.

In the instant case, because Appellant's notices of appeal each displayed more than one docket number, we issued a Rule to Show Cause at 1162 EDA 2019, 1163 EDA 2019, and 1164 EDA 2019, as to why the appeals should not be quashed pursuant to **Walker**. Rules to Show Cause, 5/1/19. Appellant filed a timely response. Response to Rule to Show Cause, 5/10/19, at 1-12. The Rules were discharged on August 7, 2019, and the matter was referred to this panel.

In **Commonwealth v. Johnson**, ___ A.3d ___, ___, 2020 PA Super 164, *4 (Pa. Super. filed July 9, 2020) (*en banc*)), this Court "observe[d] that [Pa.R.A.P.] 341 and **Walker** make no mention of case numbers on a notice of appeal." Specifically, the *en banc* Court opined that where an appellant files a separate notice of appeal at each trial court docket, "[t]he fact that the notices [of appeal] contained [more than one trial court docket number] is of no consequence." **Johnson**, 2020 PA Super 164, at *5. Because Appellant filed separate notices of appeal at each docket, he has complied with **Walker**. Thus, we shall proceed to address the merits of Appellant's remaining claims.

Appellant's second issue appears to involve two separate, although related, claims.[4] First, Appellant argues that the evidence was insufficient to support a revocation of probation on each of the cases on appeal. Appellant's Brief at 22. Second and relatedly, Appellant maintains that the Commonwealth failed to prove that the conditions of probation relating to curfew, sex-offender treatment, and possession of non-obscene videos or games were lawfully imposed. **Id.** at 22. Appellant states that the Board of Probation and Parole lacked authority to impose these conditions of probation, which had not been imposed by the trial court as required by 42 Pa.C.S. § 9754. **Id.** Appellant asserts:

---

[4] Appellant presented this issue in similar fashion in his Pa.R.A.P. 1925(b) statement. Pa.R.A.P. 1925(b) Statement, 6/10/19, at 2-3.

> In the instant case, the lower court, since it set no other parameters, apparently considered the legally mandated function of specifying "reasonable conditions" of probation as having been adequately discharged by its delegation of full responsibility for determining those conditions to the Sexual Offenders Unit of the State Board of Probation.

*Id.* at 25. Appellant cites to ***Commonwealth v. Elliott***, 50 A.3d 1284 (Pa. 2012), as support for this position that the agents of the Board "'***cannot*** impose any condition of supervision it wishes, *carte blanche*.'" Appellant's Brief at 26 (emphasis in original). Appellant contends that the lower court here has "done precisely that by its delegation to the Board of total authority for formulating and implementing any and all conditions of probation, general and specific." ***Id.*** Appellant further maintains that "the Commonwealth cannot be said to have proven beyond a reasonable doubt that Appellant failed to comply with legitimate conditions of probation ordered by the lower court so as to justify revocation of his probation as the court imposed no such conditions." ***Id.*** at 27. We shall address these issues together.

> The standard for evaluating sufficiency claims is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder['s]. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth

- 8 -

may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Estepp*, 17 A.3d 939, 943-944 (Pa. Super. 2011).

In *Elliott*, the Pennsylvania Supreme Court addressed the following question: "[W]hether the Board, county probation officers, or the agents and officers thereof, can impose conditions upon probationers that are not explicitly delineated in a trial court's sentencing and probation order." *Elliott*, 50 A.3d at 1289.

> First, under the language provided by the Sentencing Code, specifically Sections 9751 and 9771, we generally agree with [the a]ppellee and the Superior Court that only "the court, not the probation offices and not any individual probation officers, [may] impose the terms [and conditions] of probation." *MacGregor*, 912 A.2d at 317. Under Section 9754 of the Sentencing Code, this necessitates that the sentencing court, when imposing an order of probation: (1) "specify at the time of sentencing the length of any term during which the defendant is to be supervised;" (2) "the authority that shall conduct the supervision;" and (3) attach any "reasonable conditions authorized by [Section 9754(c)] as it deems necessary to insure or assist the defendant in leading a law-abiding life." 42 Pa.C.S. § 9754.
>
> Consistent with the canons of statutory construction, however, merely because the legislature has placed the authority to impose a term of probation, and the conditions thereof, solely with the trial courts, we cannot ignore the provisions of the Prisons and Parole Code that mandate the Board and its agents to establish uniform standards for the supervision of probationers under its authority, and further to implement those standards and conditions. 61 Pa.C.S. §§ 6131(a)(5)(ii) & 6151. Put differently,

if courts shall levy "conditions of probation," and the Board and its agents may impose "conditions of supervision," consistent with the legislative mandates above, we must determine what, if any, is the difference between the two and, consistent with the various standards of statutory interpretation discussed above, how they interlink.

In our view, the answer is found, again, in the respective statutory provisions. The General Assembly has specifically enumerated fourteen conditions that a court may place upon a probationer. These conditions, found in 42 Pa.C.S. § 9754(c), "shall" be imposed by a sentencing court "to insure or assist the defendant in leading a law-abiding life." 42 Pa.C.S. § 9754(b). Moreover, these conditions are inherently non-inclusive, because clause (13) of Section 9754(c) permits a court to impose any condition necessary to ensure the "rehabilitation of the defendant." *Id.* § 9754(c). Consistent, then, with a court's constitutional and statutory authority to impose a sentence, *see e.g. id.* §§ 9751, 9754, & 9771, these fourteen conditions must be the starting point in any analysis of a probation violation.

*Elliott*, 50 A.3d at 1291.

The Court noted that because the trial court must start with these fourteen conditions, "the Board and its agents cannot impose any condition of supervision it wishes, *carte blanche*." *Elliott*, 50 A.3d at 1291. The Court went on to explain, however, that:

Accepting, however, the remainder of [the appellee's] argument that the Board has no power to impose conditions of supervision would ignore that 61 Pa.C.S. §§ 6131(a)(5)(ii) and 6151 direct the Board and its agents to establish and impose "conditions of supervision," distinct from "conditions of probation." This would be improper. We thus conclude that the Board and its agents may impose conditions of supervision that are germane to, elaborate on, or interpret any conditions of probation that are imposed by the trial court. This interpretation gives meaning to all of the statutory provisions relevant to this case and thus: (1) maintains the sentencing authority solely with a trial court; (2) permits the Board and its agents to evaluate probationers on a

one-on-one basis to effectuate supervision; (3) sustains the ability of the Board to impose conditions of supervision; and (4) authorizes that a probationer may be detained, arrested, and "violated" for failing to comply with either a condition of probation or a condition of supervision. In summary, a trial court may impose conditions of probation in a generalized manner, and the Board or its agents may impose more specific conditions of supervision pertaining to that probation, so long as those supervision conditions are in furtherance of the trial court's conditions of probation.

*Id.* at 1292.

In the case *sub judice*, the trial court addressed this issue as follows:

During the violation hearing it was revealed that on September 23, 2018, [A]ppellant was released from state custody, having served his entire sentence of incarceration because he failed to attend sex offender treatment. (N.T. 3/22/19, 4-6). On September 26, 2018, he was arrested for a GPS violation and a detainer was lodged against him. He appeared before this [c]ourt on October 17, 2018, at which time this [c]ourt lifted the detainer and permitted [A]ppellant to continue serving probation. (N.T. 3/22/19, 4-5). Between October 19, 2018 and November 3, 2018, [A]ppellant committed five curfew violations. (NT, 3/22/19, 5). He also did not report on November 13, 2018, for a sexual treatment evaluation. (N.T. 3/22/19, 5).

On November 13, 2018, [A]ppellant reported to a meeting at the offices of the Probation Department. (N.T. 3/22/19, 5). In his possession, [A]ppellant had a bag containing two children's videos, condoms, and lubricant. (N.T. 3/22/19, 6). It was claimed that the videos were gifts for his nephews and that the condoms and lubricants were given to him for free while he was out walking around. (N.T. 3/22/19, 14, 18). Appellant also explained that the curfew violations resulted from his standing outside the shelter where he was housed. (N.T. 3/22/19, 19-20). No relief is due on [A]ppellant's claim.

"Revocation of a probation sentence is a matter committed to the sound discretion of the trial court and that court's decision will not be disturbed on

appeal in the absence of an error of law or an abuse of discretion," <u>Id.</u> "When assessing whether to revoke probation, the trial court must balance the interests of society in preventing future criminal conduct by the defendant against the possibility of rehabilitating the defendant outside of prison. In order to uphold a revocation of probation, the Commonwealth must show by a preponderance of the evidence that a defendant violated his probation." <u>Commonwealth v. Allshouse</u>, 33 A.3d 31, 37 (Pa.Super.2011) (quotation marks and citations omitted). "[T]he reason for revocation of probation need not necessarily be the commission of or conviction for subsequent criminal conduct. Rather, this Court has repeatedly acknowledged the very broad standard that sentencing courts must use in determining whether probation has been violated [.]" <u>Commonwealth v. Ortega</u>, 995 A.2d 879, 886 (Pa.Super.2010) (citations and internal quotations omitted). "A probation violation is established whenever it is shown that the conduct of the probationer indicates the probation has proven to have been an ineffective vehicle to accomplish rehabilitation and not sufficient to deter against future antisocial conduct." <u>Id.</u>

<u>Commonwealth v. Colon</u>, 102 A.3d 1033, 1041 (Pa. Super. 2014).

In addition, "sentencing courts have discretion to impose conditions of probation, [and] such conditions must be reasonable and devised to serve rehabilitative goals, such as recognition of wrongdoing, deterrence of future criminal conduct, and encouragement of future law-abiding conduct." <u>Commonwealth v. Hall</u>, 80 A.3d 1204, 1215 (Pa. 2013). Thus, sentencing courts have the authority to impose any condition of probation "reasonably related to the rehabilitation of the defendant and not unduly restrictive of his liberty or incompatible with his freedom of conscience." <u>Commonwealth v. Infante</u>, 888 A.2d 783, 791 (Pa. 2005).

Here, as noted, [A]ppellant claims that this [c]ourt should not have revoked his probation because the Commonwealth failed to prove that this [c]ourt specifically ordered [A]ppellant to

comply with the conditions of probation he was found to be in violation of and the Department of Probation had no legal right to impose them on [A]ppellant. This claim lacks merit.

Instantly, this [c]ourt ordered that [A]ppellant be supervised by the Sexual Offender Unit of the Probation Department. That directive was not unreasonable given that [A]ppellant was convicted of sexually assaulting children under the age of thirteen. The conditions thereafter imposed by the Probation Department such as imposing a curfew on [A]ppellant and directing him not to possess items that could be considered sexually triggering with regard to minors, in response to this [c]ourt's directive were not illegal because they were reasonable given[A]ppellant's convictions and this [c]ourt's order requiring that [A] ppellant be supervised by the Sexual Offender Unit of the Probation Department. In Commonwealth v. Elliott, 50 A.3d 1284 (Pa. 2012), the Supreme Court held that although a Department of Probation cannot "impose any condition of supervision it wishes, carte blanche", Elliott at 1291, it may impose conditions that are "germane to, elaborate on, or interpret any conditions of probation that are imposed by the trial court". Elliott at 1292. The Court then stated:

> In summary, a trial court may impose conditions of probation in a generalized manner, and the Board or its agents may impose more specific conditions of supervision pertaining to that probation, so long as those supervision conditions are in furtherance of the trial court's conditions of probation.

Elliott at 1292.

The Commonwealth presented more than sufficient evidence to find that [A]ppellant violated these reasonable conditions given that the Commonwealth presented unrefuted evidence that [A]ppellant violated curfew numerous times and also had children's videos together with condoms and lubricant in his possession. In fact, the defense conceded that [A]ppellant had violated the foregoing conditions during the revocation hearing. (N.T. 3/22/19, 7, 9). Given this and in view of the above discussion, this [c]ourt suggests that [A]ppellant's first claim be rejected.

J-S20009-20
J-S20010-20
J-S20011-20

Trial Court Opinion, 7/8/19, at 3-6.

We agree. In the case *sub judice*, as noted, at docket number CP-51-CR-0009019-2015, and docket number CP-51-CR-0009020-2015, Appellant was sentenced, following negotiated *nolo-contendere* pleas, on July 14, 2016. At both dockets, Appellant was sentenced to "reporting probation with Sex Offender's Condition; . . . Orders to have no unsupervised contact with minors; to stay away from complainants[.]" Docket Number CP-51-CR-0009019-2015 Order, 7/29/15, at 1; Docket Number CP-51-CR-0009020-2015, 7/29/15, at 1. Furthermore, upon his first probation violation following sentencing, Appellant was resentenced on May 15, 2017, to an additional term of probation and was ordered to be supervised by the Sex Offender Unit of the Probation Department. Docket Number CP-51-CR-0009019-2015 Order, 5/15/17, at 1; Docket Number CP-51-CR-0009020-2015, 5/15/17, at 1.

At the probation violation hearing, the probation officer explained the basis of Appellant's violation as follows:

> [PAROLE AGENT]: He incurred -- he was placed on GPS monitoring when you released him at that time at that violation hearing. On -- he was placed on GPS on October 19th. From October 25th to November 3rd he incurred five different violations, curfew violations. I addressed these violations.
>
> After the first one, I increased his curfew, after the second -- the four subsequent ones, I issued a sanction for community service.
>
> Additionally, [Appellant] was referred to . . . sex offender treatment. He had an intake date, which I had given him written instructions to attend, on November 13th. I have included the

- 14 -

written instruction, which [Appellant] signed in my packet, at the end.

He failed to report to that evaluation as directed to. He did show up to the office that day, unscheduled. He met with my supervisor and my deputy. They conferenced him due to multiple violations, his failure to attend treatment, and his just blatant disregard for the conditions of the supervision.

He was in possession at that time of a lunch bag, Your Honor. We searched the lunch bag and it contained two children's videos, which I have here if you would like to see. But I also made photocopies for Your Honor's packet.

And so it had these two children's video games and there was also condoms and lube in with the lunch bag. [Appellant] was in possession of this. It was contained and it was geared toward children, obviously. And it's extremely concerning to myself.

THE COURT: Yes. I'd say so.

PAROLE AGENT: He has displayed, as I said, a blatant disregard for the conditions of the supervision. He maxed out because he failed to attend sex offender treatment and he also incurred numerous misconducts while he was in state custody. So he did not have a favorable parole recommendation, and ended up maxing out that sentence.

N.T., 3/22/19, at 5-6.

Appellant's counsel responded:

So, for starters, yes, he did have some technical violations. We're not disputing those technical violations. He has been in custody on those technical violations since, I believe, November 13th of 2018.

* * *

He did violate curfew, he did not get his evaluations done, we're not disputing that. All I'm asking, Your Honor, is that he has served time for that. He did serve four months -- more than four months now for those technical violations.

- 15 -

> In terms of what the – [parole agent] has brought with the games, the condom, and the lube, Your Honor, I will say this: In terms of the games, he's not supposed to have that, it is part of the rules. However, as you know, sex offender rules are -- there's a lot. There's a lot of rules, and he signed the form.
>
> But, you know, he made a mistake[.]

N.T., 3/22/19, at 9.

Thus, there is sufficient evidence to establish that Appellant violated the probationary terms. Indeed, Appellant acknowledged that he violated the conditions of his probation relating to curfew, sex-offender treatment and possession of children's video games. Moreover, Appellant acknowledged that he had signed the form outlining the sex-offender conditions.

Furthermore, the terms of the sex offender probationary rules were properly set by the Probation Board. The trial court sentenced Appellant to probation and ordered the length of probation, making such probation subject to sex offender conditions. As the Court in **Elliott** explained, probationary factor (c)(13) is a catchall, allowing for terms necessary to ensure the "rehabilitation of the defendant." **Elliott**, 50 A.3d at 1291; 42 Pa.C.S. § 9754(c)(13). As this Court also explained in **Elliott**, "the Board and its agents may impose conditions of supervision that are germane to, elaborate on, or interpret any conditions of probation that are imposed by the trial court." **Id.** at 1292. Thus, the Probation Board acted within its authority by imposing specific conditions in furtherance of the trial court's order of

probation. Accordingly, Appellant is entitled to no relief on his claim that the conditions of probation relating to curfew, sex-offender treatment, and possession of non-obscene children's videos or games were unlawfully imposed.

In his final claim, Appellant argues that the trial court imposed a manifestly excessive sentence of total confinement for technical probation violations in derogation of Sections 9771 and 9721 of the Sentencing Code. Appellant's Brief at 28. Appellant further asserts that the sentence imposed was unreasonable and unnecessary to vindicate the authority of the court, and that the court failed to consider the least restrictive alternatives, Appellant's needs, and the possible harm to the community. *Id.* at 30-31.

Appellant's issue challenges the discretionary aspects of his sentence. We note that "[t]he right to appellate review of the discretionary aspects of a sentence is not absolute." *Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa. Super. 2014). Rather, where an appellant challenges the discretionary aspects of a sentence, the appeal should be considered a petition for allowance of appeal. *Commonwealth v. W.H.M.*, 932 A.2d 155, 163 (Pa. Super. 2007).

As we observed in *Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (citing *Commonwealth v. Evans*, 901 A.2d 528 (Pa. Super. 2006)):

> An appellant challenging the discretionary aspects of his sentence
> must invoke this Court's jurisdiction by satisfying a four-part test:

> [W]e conduct a four-part analysis to determine:
> (1) whether appellant has filed a timely notice of
> appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the
> issue was properly preserved at sentencing or in a
> motion to reconsider and modify sentence, **see**
> Pa.R.Crim.P. 708; (3) whether appellant's brief has a
> fatal defect, Pa.R.A.P. 2119(f); and (4) whether there
> is a substantial question that the sentence appealed
> from is not appropriate under the Sentencing Code,
> 42 Pa.C.S.A. § 9781(b).

*Id*. at 170. Whether a particular issue constitutes a substantial question about the appropriateness of sentence is a question to be evaluated on a case-by-case basis. **Commonwealth v. Kenner**, 784 A.2d 808, 811 (Pa. Super. 2001).

Here, two requirements of the four-part test were met in all three underlying cases: Appellant filed a timely appeal, and Appellant included a statement raising this issue in his brief pursuant to Rule 2119(f). **Moury**, 992 A.2d at 170.

We observe, however, that Appellant failed to meet the requirement that the issue be properly preserved at sentencing or in a motion to reconsider and modify sentence. **Moury**, 992 A.2d at 170. "[W]hen a court revokes probation and imposes a new sentence, a criminal defendant needs to preserve challenges to the discretionary aspects of that new sentence either by objecting during the revocation sentencing or by filing a post-sentence motion." **Commonwealth v. Kalichak**, 943 A.2d 285, 289 (Pa. Super. 2008); Pa.R.Crim.P. 708(D). The record reflects that Appellant did not object

to the new sentence at the revocation sentencing. N.T., 3/22/19, at 1-24. Moreover, the record reveals that Appellant filed a post-sentence motion in only one of the three underlying cases, docket number CP-51-CR-0009020-2015. Thus, this claim arguably is preserved as to only docket number CP-51-CR-0009020-2015.

Furthermore, Pa.R.Crim.P. 708(E) provides: "A motion to modify a sentence imposed after a revocation shall be filed within 10 days of the date of imposition. The filing of a motion to modify sentence will not toll the 30-day appeal period." At docket number CP-51-CR-0009020-2015, the only underlying docket at which Appellant filed a post-sentence motion, Appellant's motion to modify sentence was filed on April 15, 2019, more than ten days from the imposition of sentence on March 22, 2019. Petition to Vacate and Reconsider Sentence, 4/15/19, at 1-8. Thus, the motion was untimely and did not preserve his claim. Accordingly, Appellant has failed to preserve the challenge to the discretionary aspects of his sentence claim. *Moury*, 992 A.2d at 170.

Judgments of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/6/20

- 19 -